IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOHN POORE,

        Plaintiff,

vs.                                 No. CIV 02-1564 LCS

JO ANNE BARNHART,
COMMISSIONER OF SOCIAL SECURITY.

        Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** came before the Court upon Plaintiff's Motion to Reverse and Remand (Doc. 8), filed April 23, 2003.  The Commissioner of Social Security issued a final decision denying Plaintiff's application for disability insurance benefits.  This matter comes before this Court pursuant to 28 U.S.C. § 636(c).  The United States Magistrate Judge, having considered the Motion, briefs, administrative record, and applicable law, finds that this Motion is well-taken and should be **GRANTED**.

### I.  STANDARD OF REVIEW

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied correct legal standards. *Hamilton v. Sec'y of Health and Human Svcs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such relevant evidence that a reasonable mind might accept to support the conclusion. *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).  The decision of an Administrative Law Judge ("ALJ") is not supported by substantial evidence if the evidence supporting the decision is

overwhelmed by other evidence on the record.  *Id.* at 805.

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or to last for a continuous period of at least twelve months which prevents the claimant from engaging in substantial gainful activity.  *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. § 423(d)(1)(A)).  The Secretary has established a five-step process for evaluating a disability claim.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  At the first four levels of the sequential evaluation process, the claimant must show that he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disability impairments listed in the regulations under 20 C.F.R. Part 404, Subpart P, App. 1, or he is unable to perform work he had done in the past.  20 C.F.R. §§ 404.1520 and 416.920.  *See Rayes v. Bowen*, 845 F.2d 242, 243 (10th Cir. 1988).  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education and prior work experience.  *See Gibson v. Bowen*, 838 F.2d 442, 448 (10th Cir. 1988).

## II.  PROCEDURAL HISTORY

Plaintiff, now 36 years old, filed his application for a period of disability and disability insurance benefits on June 18, 1995, alleging disability commencing on November 20, 1994..  (R. at 116-118.)  Plaintiff's alleged disability was due to degenerative disc disease, chronic pain syndrome and chronic migraine headaches originating from a motor vehicle accident in November of 1994.  (R. at 299-300.)  Plaintiff also complained of dysthymic disorder with major depressive

episodes.  (Id.)  Plaintiff has a high school education and past relevant work in a manufacturing

plant as a ceramic press operator and as a clerk in a convenience store.  (R. at 149.)

Plaintiff's first application for disability insurance benefits was denied at the initial level on

October 19, 1995 (R. at 119.) and at the reconsideration level on September 25, 1996.  (R. at

222-224.)  Plaintiff appealed the denial of his application by filing a Request for Hearing by

Administrative Law Judge. (R. at 227.)  On October 20, 1996, Mary Wilson was retained to

represent Plaintiff.  (R. at 44.)  ALJ Vanderhoof conducted a hearing on May 8, 1997, at which

Plaintiff was represented by Ms. Wilson.  (R. at 46.)  The ALJ issued a decision unfavorable to

Plaintiff and Plaintiff requested review of the Hearing Decision on July 14, 1997.  (R. at 42.)

On November 7, 1997, attorney Michael D. Armstrong was retained to represent Plaintiff.

(R. at 41.)  Plaintiff submitted another application for benefits while his appeal was pending.  (R.

at 19.)  This application was granted at the administrative level and Plaintiff began receiving

Social Security disability benefits in November of 1997.  (R. at 85.)  The Appeals Council issued

an order remanding the case to the ALJ on September 8, 1999.  (R. at 239-242.)  On remand, the

ALJ considered whether Plaintiff could meet the disability requirements for the period between

November of 1994 and November of 1997.  (R. at 19.)  The second hearing for a period of

disability and disability insurance benefits took place on October 31, 2000 at which Plaintiff was

represented by Mr. Armstrong.  (R. at 77.)  Plaintiff was the only witness at this hearing.  (R. at

79-111.)

During the October 31, 2000 hearing, Plaintiff testified that he had been experiencing pain,

migraine headaches, and severe depression since the date of his accident.  He also related

problems with sleeping and petit mal seizures.  (R. at 85-86.)    Plaintiff indicated that he had

numbness in his extremities resulting from spinal injuries.  (R. at 86.)  He stated he was currently

seeing physicians on a regular basis for pain management and depression.  (R. at 87.)  He further

testified that he was on a number of prescription medications for pain and that these medications

caused him to become drowsy and  made it difficult for him to concentrate.  (R. at 90.)   Plaintiff

indicated that his activity level and social interaction was very limited.  (R. at 93-94.)

      The ALJ issued his decision on January 24, 2001 (R. at 25.), analyzing Plaintiff's claim in

accordance with the sequential analysis set forth in 20 C.F.R. § 404.1520(a)-(f).  At step one of

the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful

activity since the alleged onset of disability in 1994.  (R. at 24.)  At the second step, the ALJ

found that Plaintiff had an impairment or combination of impairments considered 'severe' based

on the requirements of 20 C.F.R. § 404.1520(b).  (Id.)  The ALJ further found that at no time

during the period at issue had Plaintiff's capacity for work been compromised by nonexertional

limitations.  (R. at 25.)  At the third step of the analysis, the ALJ found that the severity of

Plaintiff's impairments did not meet or equal any of the impairments found in the Listing of

Impairments ("Listings"), Appendix I, Subpart P, 20 C.F.R. §§ 401.1501-1599.  (Id.)  The ALJ

also found that Plaintiff was not credible with regard to allegations as to his limitations.  (Id.)  At

step four, the ALJ found that Plaintiff had a Residual Functional Capacity ("RFC")  for work at

the light exertional level during all relevant periods.  (Id.)  As a result of this analysis, the ALJ

determined that Plaintiff was capable of performing his past relevant work as a press operator

during the period at issue.  (Id.)  Accordingly, the ALJ found that Plaintiff had not been under a

disability, as defined in the Social Security Act, at any time during the period under review.  (R. at

25.)  The ALJ completed an alternative analysis under step five of the sequential evaluation.  (R.

at 24.)  At step five, the ALJ determined, through use of the grids[1], that there were a number of jobs existing in the national economy which Plaintiff was capable of performing.  (Id.)

Plaintiff filed a Request for Review of Hearing Decision on February 1, 2001.  (R. at 14.) On October 29, 2002 the Appeals Council denied Plaintiff's request for review.  (R. at 10-11.) Hence, the decision of the ALJ became the final decision of the Commissioner for purposes of judicial review.  On April 23, 2003, Plaintiff filed this action, seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## III.  ANALYSIS AND FINDINGS

On November 17, 1994, Plaintiff was involved in a motor vehicle accident in which he suffered injury to his thoracic and cervical spine.  (R. at 179-180.)  During the period between Plaintiff's motor vehicle accident in November, 1994 and the time Plaintiff began receiving Social Security disability benefits in November, 1997, Plaintiff began seeing William Levitt, D.O.  on a regular basis for various medical problems related to the accident.  (R. at 171-200.)

Plaintiff began work in 1981 and worked at various construction jobs between 1981 and 1987.  (Id.)  He worked as a clerk and as assistant manager at a convenience store between 1987 and 1989 and again between the years of 1991 and 1993 (R. at 256.)  Plaintiff was working as a press operator for Motorola at the time of the motor vehicle accident in 1994.  (Id.)  This job involved the use of various machines to press and weigh ceramic filters.  (R. at 257.)

On November 18, 1994, Plaintiff met with Dr. Levitt at which time he expressed problems with severe headaches, neck pain, upper back pain, muscle spasms, nausea, vomiting, difficulty sleeping, numbness in the hands bilaterally, dizziness and migraine headaches.  (R. at 198.)  At

---

[1]*See* 20 C.F.R. § 404.1567; Medical-Vocational Rule 202.27, Appendix 2, Subpart P, Regulation No. 4.

that time, Plaintiff was found to be suffering from cervical and thoracic strain/sprain with restricted motion in both the cervical and thoracic spine. (R. at 199.) Dr. Levitt placed the Plaintiff on Percocet and Soma for pain and muscle stiffness and recommended aggressive osteopathic manipulation therapy. (R. at 199-200.)

Dr. Levitt continued to see Plaintiff on a regular basis through late 1996. On May 18, 1995, Dr. Levitt opined that Plaintiff had reached maximum medical improvement. (R. at 179.) An MRI scan of Plaintiff's cervical spine performed on May 22, 1995 revealed a 4 mm. posterior IVD protrusion at T 2-3 causing effacement of the anterior aspect of the spinal cord. (R. at 177.) Dr. Levitt noted that Plaintiff continued to have decreased grip strength in his hands bilaterally. (R. at 179.) Dr. Levitt opined that the herniated nucleus indenting Plaintiff's spinal cord would be a permanent condition. (R. at 180.) Also observed were muscle spasms, point tenderness and resolving cervical and thoracic strain with decreased range of motion. (Id.) Dr. Levitt further stated that Plaintiff would likely need vocational rehabilitation and would also need to be placed in another job as Plaintiff would no longer be able to use his upper extremities continuously as required by Plaintiff's position with Motorola. (Id.)

Dr. Levitt's records indicate that Plaintiff continued to complain of pain and decreased range of motion throughout 1995 and 1996. (R. at 311-322.) In late 1995 Plaintiff continued to complain of migraine headaches with migraine cephalgia worsening. (R. at 317.) Dr. Levitt also wrote Plaintiff a prescription for a lumbosacral support brace in 1995 due to degenerative changes in the lumbosacral spine. (R. at 316.) Although Dr. Levitt's records from August of 1996 indicate that Plaintiff had a desire to return to work and little to no sedation from his medications (R. at 312), Dr. Levitt's records from December of 1996 indicate that Plaintiff was taking several

medications including Percocet[2], Mepergan Fortis[3], Soma[4] and Elavil[5] and that a side-effect of these medications was sedation. (R. at 320.) Dr. Levitt also opined at this time that Plaintiff was moderately limited in understanding and memory, sustained concentration and persistence, and social interaction and adaptation. (R. at 319-320.)

The Plaintiff also received a psychiatric evaluation on September 22, 1995, performed by Carlos Balcazar, M.D. (R. at 202.) Dr. Balcazar noted that Plaintiff had a long history of psychiatric problems and treatment due to anxiety, depression and suicide attempts. (Id.) Plaintiff indicated he had made between 20 and 30 suicide attempts in the past and had been taking medications for depression since age 21. (Id.) Dr. Balcazar diagnosed Plaintiff as having depression of moderate intensity, possibly resulting from physical limitations and pain. (R. at 204.) Dr. Balcazar further diagnosed Plaintiff with dysthymic disorder with episodes of major depression and atypical personality disorder. (Id.) He further opined that Plaintiff's functioning during the previous year had been poor. (Id.) Dr. Balcazar stated that Plaintiff could likely perform simple jobs and repetitive tasks from a psychiatric standpoint, and that Plaintiff's main difficulty would likely be of a physical nature. (R. at 204-205.)

---

[2]Percocet, a combination of oxycodone and acetaminophen, is a Schedule II controlled substance and can produce drug dependance. Percocet is indicated for the relief of moderate to moderately severe pain. Oxycodone may impair mental and/or physical abilities required for driving a motor vehicle or operating machinery. *Physicians Desk Reference,* 1037, (54th ed. 2000).

[3]Mepergan Fortis is a narcotic analgesic with multiple actions qualitatively similar to those of morphine. Mepergan can produce drug dependance and may impair mental and/or physical abilities required for driving a motor vehicle or operating machinery. *PDR* 3273-3274.

[4]Soma is indicated as an adjunct to rest and physical therapy for the relief of discomfort associated with acute, painful musculoskeletal conditions. Soma may impair mental and/or physical abilities required for driving a motor vehicle or operating machinery. *PDR* 3160.

[5]Elavil is indicated for the treatment of depression. It is known to have sedative effects. *PDR*, 549.

## IV. DISCUSSION

Plaintiff argues that the ALJ denied him due process by failing to consider the evidence as directed by the Appeals Council, that the ALJ failed to properly analyze Plaintiff's ability to engage in past relevant work, that the ALJ's decision was not supported by substantial evidence and that the ALJ erred in using the grids and not consulting a vocational expert given Plaintiff's non-exertional limitations. (Doc. 8, 11.)

Plaintiff first asserts that the ALJ erred in not following the directives contained in the Appeals Council's September 8, 1999 remand order. Specifically, the Appeals Council directed the ALJ to further evaluate Plaintiff's subjective complaints, to give further consideration to Plaintiff's maximum residual functional capacity during the period at issue, and to obtain evidence from a vocational expert. (R. at 241.) Although Plaintiff appears to be correct in asserting that the ALJ did not follow the Appeals Council's directives, this Court's jurisdiction extends only to the final decision of the Commissioner. *Gallegos v. Apfel*, No. 97-2267, 1998 WL 166064, at *1 (April 10, 1998) (unpublished) (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)); 42 U.S.C. § 405(g). As such, this Court does not have jurisdiction to consider Plaintiff's contentions regarding the ALJ's adherence to the Appeals Council's remand order. *Gallegos*, 1998 WL 166064, at *1 ("Plaintiff's challenge to the ALJ's adherence to the Appeals Council's remand order is not cognizable by this court. By statute, our jurisdiction extends only to the Commissioner's final decision.")

### a. Analysis at Step Four of the Sequential Evaluation

Plaintiff also contends that the ALJ did not complete a proper analysis under step four of the sequential evaluation regarding his ability to engage in his past relevant work for the period in

question.  I find that the ALJ's analysis was not proper because it is not clear that he considered all the evidence relevant to a determination at step four.  It is well established in the Tenth Circuit that an ALJ is not required to discuss every piece of evidence.  *Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996).  However, the record must demonstrate that the ALJ considered all of the evidence.  *Id.*  Further, in addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon as well as significantly probative evidence he rejects.  *Clifton*, 79 F.3d at 1010 (quoting *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984)("a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position")).

In rendering his opinion that Plaintiff could return to his past relevant work, the ALJ relied on Dr. Levitt's assertion that he would provide Plaintiff with a letter stating that his medications posed no impairment in his ability to work, Dr. Levitt's report of December 2, 1996 indicating that Plaintiff had moderate limitations in social functioning, and Plaintiff's belief in August of 1996 that he could return to work.  (R. at 22.)   However, numerous other medical reports existed which the ALJ chose not to discuss.  Considerable evidence existed that Plaintiff had significant physical problems during the period in question and that he was not capable of returning to his past relevant work.  It is not clear from the record that the ALJ considered this evidence.  Therefore, the case must be remanded for further proceedings.  *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)("The ALJ is charged with carefully considering all the relevant evidence and linking his findings with specific evidence...A bare conclusion is beyond meaningful judicial review.")

The ALJ further erred at step four in the weight given to Mr. Poore's primary treating physician's opinions.  It is axiomatic that the ALJ must give controlling weight to the treating physician's opinion, provided that opinion is well-supported and is not inconsistent with other substantial evidence.  *White v. Barnhart*, 287 F.3d 903. 907 (10th Cir. 2001).  20 C.F.R. § 404.1527(d)(2).  The Tenth Circuit has held that factors to be considered in evaluating a treating physician's opinions include the opinion's consistency with other evidence, the length of the treatment relationship, the frequency of examination and the extent to which the opinion is supported by objective medical evidence.  *Id.*  It is apparent from the record that Dr. Levitt had a longstanding relationship with Mr. Poore, that he examined the Plaintiff on a regular basis, and that his opinions regarding Plaintiff were largely consistent over time.

However, the ALJ merely stated that "Dr. Levitt's evaluation is not necessarily commensurate with a finding of either 'disabled' or 'not disabled.'"  (R. at 23.)  He went on to state that "[Dr. Levitt's] assessment does not add to the discussion of functional capability." (Id.), without stating how he reached this conclusion.  In fact, Dr. Levitt opined in 1995, after examining Plaintiff, that Plaintiff would need vocational training as he would be unable to return to his past job.  (R. at 180.)  Although Dr. Levitt's conclusions are not binding on the ALJ, his conclusions should have been addressed in the ALJ's opinion.  An ALJ may disregard the opinion of a treating physician when he has set forth specific and legitimate reasons for discounting the doctor's opinion.  *White*, 287 F.3d at 907.  However, the ALJ set forth only the most cursory explanation as to his evaluation of Dr. Levitt's analysis.  (R. at 23-24.)  Such an evaluation is inappropriate under this Circuit's precedent regarding the opinions of treating physicians.  Although an ALJ may disregard the opinions of a treating physician, he is required to set forth

10

specific, legitimate reasons why he chooses not to rely on these opinions. *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996).

Finally, the ALJ's decision as to Mr. Poore's residual functional capacity ("RFC") was not supported by substantial evidence. As indicated above, substantial evidence requires more than a scintilla, but less than a preponderance and is satisfied by such relevant evidence that a reasonable mind might accept to support the conclusion. *Gossett*, 862 F.2d at 804. In the present case, the ALJ's determination of Mr. Poore's RFC was not supported by substantial evidence. Indeed, it is unclear from the ALJ's opinion how he arrived at a decision regarding Plaintiff's residual functional capacity.

The ALJ apparently found that Plaintiff was not disabled at step four of the sequential analysis because he could return to his past relevant work. Step four of the analysis is comprised of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). In the first phase, the ALJ must evaluate the Plaintiff's physical and mental residual functional capacity. SSR 86-8, Soc. Sec. Rep Serv., Rulings 1983-1991, 423, 427 (West 1992). At the second phase, the ALJ must determine the physical and mental demands of Plaintiff's past relevant work. 20 C.F.R. § 404.1520(e). Finally, the ALJ must determine whether the claimant retains the ability to meet the job demands found in phase two despite the physical and/or mental limitations found in phase one. SSR 82-62, Soc. Sec. Rep. Serv., Rulings 1975-1982, 809; *Winfrey*, 92 F.3d at 1023.

Phase one of the step four analysis requires the ALJ to evaluate the Plaintiff's mental and physical residual functional capacity. The ALJ found that Plaintiff had the residual functional capacity for work activity at the light exertional level. (R. at 23.) He apparently based this conclusion solely on Plaintiff's desire to return to work and on a note in Dr. Levitt's records,

dated August, 1996, indicating he would write Plaintiff a letter to his employer if Plaintiff wished

to return to work.  (R. at 312.)

Furthermore, it does not appear from the ALJ's opinion that the ALJ completed the step

four analysis of the sequential evaluation as outlined in *Winfrey*.  He did not make findings as to

the physical and mental demands of Mr. Poore's work as a press operator for Motorola at phase

two.  Nor did the ALJ make specific findings at phase three regarding Plaintiff's ability to perform

his former job given the limitations found in phase one of step four. *Chester v. Apfel*, 182 F.3d

931, 1999 WL 360176 (10th Cir. Jun. 4, 1999).

Given these errors, I conclude that the ALJ did not conduct a proper analysis of Plaintiff's

residual functional capacity at step four of the sequential analysis.  As such, this case must be

reversed and remanded for further proceedings consistent with this opinion.

### b.  Analysis at Step 5 of the Sequential Evaluation

It appears that the ALJ completed an alternative step five analysis under the sequential

evaluation.  (R. at 24.)  At the fifth step of the evaluation, the burden of proof shifts to the

Commissioner to show the claimant is able to perform other substantial gainful activity

considering his residual functional capacity, age, education and prior work experience. *See*

*Gatson,* 838 F.2d  at 448.  The ALJ concluded that, "there were jobs, existing in significant

numbers in the national economy, which the claimant could have performed."  (R. at 24.)

The ALJ's step five analysis was deficient.  It appears that the ALJ applied the Secretary's

medical-vocational guidelines ("grids") in analyzing Plaintiff's residual functional capacity.  (R. at

25.)  Use of the grids is inappropriate when the claimant suffers from both exertional and non-

exertional impairments when a vocational expert is not consulted.  *See* 20 C.F.R. Supt. P., App. 2

§ 200(e), *Channel v. Heckler*, 747 F.2d 577, 581 (10th Cir. 1984).

Plaintiff alleged non-exertional impairments, specifically pain and depression, in addition to his exertional impairments. The Tenth Circuit has previously set out a framework for the proper analysis of allegedly disabling pain. *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). The ALJ must consider 1) whether Claimant has established a pain-producing impairment by objective medical evidence; 2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and 3) if so, whether considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling. *Id.* at 163-164.

Regarding Plaintiff's complaints of depression, the ALJ's determination as to the credibility of Plaintiff's symptoms will be upheld if supported by substantial evidence. *Diaz v. Sec'y of Health and Human Svcs.*, 898 F.2d 774, 777 (10th Cir. 1990). By statute, objective medical evidence must establish an impairment, and statements regarding the intensity and persistence of symptoms must be consistent with the medical findings and signs. 42 U.S.C. § 423(d)(5)(A) (Supp. 1988). The ALJ must carefully consider all the relevant evidence regarding Plaintiff's depression and link his findings with specific evidence. *Drapeau*, 255 F.3d at 1213.

Should the ALJ reach step five upon remand, he must conduct the above analysis to determine if Plaintiff has non-exertional impairments. If non-exertional impairments are found to exist, the ALJ must call a vocational expert regarding Plaintiff's residual functional capacity given his exertional and non-exertional limitations. *Channel*, 747 F.2d at 581.

Given the deficiencies with the ALJ's step five analysis, this case must be reversed and remanded for further proceedings consistent with this opinion.

13

**V.  CONCLUSION**

Upon review of the evidence presented on this Motion to Reverse and Remand for Rehearing, the Court has determined that the Commissioner's decision was not supported by substantial evidence and that the ALJ failed to adequately develop the record at step four and step five of the sequential analysis.  Accordingly, Plaintiff's Motion to Reverse and Remand for Rehearing is **GRANTED**.

**A JUDGMENT CONSISTENT WITH THIS OPINION SHALL ISSUE.**

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**